IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DOLORES AREBALO, o/b/o EPIPHONIO AREBALO, <br> PLAINTIFF, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> COMMISSIONER OF SOCIAL SECURITY, <br> DEFENDANT. | § § § § § § § § § § | CIVIL ACTION NO. 4:09-CV-496-A |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

A.  Statement of the Case

Plaintiff Dolores Arebalo, on behalf of Epiphonio Arebalo ("Arebalo"), filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA").[1] On December 27, 2006, Arebalo filed an application for disability insurance benefits alleging that he became disabled on

---

[1] Epiphonio Arebalo died on December 7, 2008. Dolores Arebalo, Epiphonio Arebalo's wife, filed a Request for Designation as a Substitute Party in a Proceeding Pending Before the Appeals Council on March 26, 2009. (Tr. 137-39.)

1

June 17, 2006. (Transcript ("Tr.") 12.) His application was denied initially and on reconsideration. (Tr. 12.) The ALJ held a hearing on August 5, 2008 and issued a decision on September 26, 2008 that Arebalo was not disabled. (Tr. 9-18.)

Subsequently, Arebalo filed a written request for review with the Appeals Council. (Tr. 7). Prior to the Appeals Council's decision, Arebalo submitted, *inter alia*, a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" ("Medical Assessment") dated October 22, 2008, which was signed by Serag[2] Dredar, M.D. ("Dredar"). (Tr. 418-19.) The Appeals Council denied Arebalo's request for review on May 29, 2009, leaving the ALJ's decision to stand as the final decision of the Commissioner (Tr. 2-6.) As to the Medical Assessment and other evidence submitted by Arebalo, the Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.[3]
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's Decision.

(Tr. 2-3.)

B. Standard of Review

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions govern such insurance benefits. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§

---

[2] The Appeals Council stated that Dredar's first name was "Jerag." However, information provided by Arebalo indicates Dredar's first name is actually Serag. (Pl.'s Br., App. 1.)

[3] In the Order of Appeals Council, the Appeals Council listed that it had received "Examiner [S]erag Dredar report dated October 22, 2008 (Exhibit-14F)." (Tr. 6.)

2

423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*,

837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

C.  Issues

1. Whether the ALJ erred in not considering the determination of disability made by the Department of Veterans Affairs ("VA").

2. Whether the Appeals Council erred in failing to address the medical opinion of Dredar submitted by Arebalo after the ALJ's decision.

3. Whether the ALJ erred by: (1) failing to find that Arebalo's mental impairments were severe and (2) failing to evaluate Arebalo's mental impairments pursuant to the special technique set forth in 20 C.F.R. § 404.1520a.

D.  Administrative Record

1. ALJ Decision

The ALJ, in his September 26, 2008 decision, found that Arebalo had not engaged in any substantial gainful activity since June 17, 2006, the alleged onset date of Arebalo's disability. (Tr. 13.) He further found that Arebalo had the severe impairments of hepatitis C and type II diabetes mellitus.[4] (*Id.*) Next, the ALJ found that none of Arebalo's impairments met or equaled

---
[4] The Court notes that the ALJ, in his decision, indicated in the "Rationale" section that Arebalo had the severe impairments of hepatitis C and type II diabetes mellitus but stated in the "Findings" section that Arebalo only had "severe hepatitis C." (Tr. 17.)

4

the severity of any impairment in the Listing. (*Id.*) As to Arebalo's depression, the ALJ stated:

> As for the allegation of depression: in a note from the Dallas VA dated December 6, 2006, it was noted that the claimant had been previously diagnosed with depression and that he was started on Celexa 20 mg. The claimant reported to the doctor that his 'mood is much better since he has started taking Celexa. Over all energy is improved. He sleeps 8 to 10 hours a night and feels rested after that.' The claimant denied any side effects to the medication and denied any substance abuse.

(Tr. 13-14.)

The ALJ concluded that Arebalo had the residual functional capacity ("RFC") for sedentary work. (Tr. 15.) Based on the RFC assessment, the ALJ opined that Arebalo was not able to perform his past relevant work, but there were jobs that existed in the national economy that Arebalo would be able to perform. (Tr. 16-17.) Consequently, the ALJ found Arebalo was not disabled. (*Id.*)

    E.    <u>Discussion</u>

        1.  <u>VA Disability Determination</u>

Arebalo argues that the ALJ erred in his decision by failing to address the VA's determination that Arebalo was permanently and totally disabled as of June 2006. (Pl.'s Br. at 5-6.) Arebalo claims that such a failure requires the case to be remanded so that "the evidence from the Department of Veteran's [A]ffairs can be properly weighed." (*Id.* at 6.) The Commissioner, on the other hand, argues that the ALJ did not err because: (1) the ALJ discussed all of the evidence regarding Arebalo's eye impairment that was considered by the VA; (2) the ALJ discussed additional evidence showing that Arebalo's claims of blindness were not credible; (3) substantial evidence supports the ALJ's decision that Arebalo was not disabled; and (4) the

"VA decision was made based solely on the issue of blindness and none of Arebalo's other alleged impairments." (Def.'s Br. at 5-7.)

"A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000)); *see* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006);[5] *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). However, pursuant to Fifth Circuit precedent, a VA disability determination is entitled to great weight unless the ALJ adequately explains the valid reasons for not doing so. *Chambliss*, 269 F.3d at 522; *see Machia v. Astrue*, 670 F. Supp. 2d 326, 336 (D.Vt. 2009) ("Commissioner cannot avoid remand by pointing out that the ALJ 'considered the evidence upon which the VA determination was based.'") "Where the ALJ disagrees with VA's disability findings, there is no reversible error as long as the record reflects consideration of those findings." *Welch v. Barnhart*, 337 F. Supp. 2d 929, 935 (S.D. Tex. 2004). "[T]he ALJ's legal error in failing to consider and weigh the disability rating by the VA is not a situation where the principle of harmless error can be

---

[5] The relevant portion of SSR 06-03p states:

> [W]e are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 C.F.R. 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006).

6

applied." *McCaa v. Astrue*, No. 09-72-SCR, 2010 WL 1533287, at *6 (M.D. La. Apr. 14, 2010).[6]

In this case, the record indicates that the VA issued a rating decision on September 29, 2006 finding Arebalo "permanently and totally disabled" and granting him entitlement to nonservice-connected pension as of July 28, 2006 based on his disabilities of loss of vision, hepatitis C, hypertension, gastroesophageal reflux disease, and onychomycosis. (Tr. 132-33.) In its decision, the VA stated it considered the following as evidence in making such a determination: (1) letter dated September 11, 2006, to Arebalo requesting evidence to support his disability claim; (2) Veteran's Application for Pension received July 28, 2006; and (3) Texas Department of Criminal Justice eye examination dated July 28, 2006. (Tr. 132.)

The ALJ, in his decision, wholly failed to mention or discuss the VA's permanent and total disability rating even though it was in the record prior to the date of the ALJ's decision.[7]

---

[6] *See Beltran v. Astrue*, No. 4:09-111, 2010 WL 519760, at *4 (S.D. Tex. Feb. 9, 2010) (holding that the ALJ's failure to consider the VA's disability determination without explanation was grounds for reversal); *J.W.M. v. U.S. Comm'r Soc. Sec. Admin.*, No. 08-CV-0814, 2009 WL 3645105, at *2 (W.D. La. Oct. 30, 2009) (finding that the ALJ's failure to consider the VA's disability determination and lack of "explanation of valid reasons for not giving great or some level of weight to the VA decision" was reversible error based on Fifth Circuit precedent); *McCown v. Astrue*, No. G-06-745, 2008 WL 706704, at *17 (S.D. Tex. Mar. 14, 2008) (remanding case to ALJ because, although there was an indication that the ALJ had acknowledged that the VA had rated the claimant as 100% disabled, there was no indication that this rating was scrutinized by the ALJ); *Welch v. Barnhart*, 337 F. Supp. 2d 929, 935-36 (S.D. Tex. 2004) (finding that ALJ's failure to discuss claimant's VA disability rating and total disregard of his VA disability determination was reversible error and harmless error analysis was not applicable because it would put the court in the position of reweighing evidence and substituting its own judgment for that of the Commissioner). *But see K.D.H. v. U.S. Comm'r Soc. Sec. Admin.*, No. 09-CV-0679, 2010 WL 3037269, at *3 (W.D. La. Aug. 3, 2010) (finding that any error by the ALJ from failing to discuss the VA disability determination was harmless as the VA disability rating did not find the claimant totally disabled and "[t]here is no reason in the record to believe the VA finding suggests a greater degree of limitation than is reflected in the ALJ's RFC for mere sedentary work."); *Fitzgerald v. Astrue*, No. 2:08-CV-170, 2009 WL 4571762, at *10-11 (D.Vt. Nov. 30, 2009) (exceptional circumstances warranted use of harmless error analysis as court could say no reasonable administrative factfinder could have resolved factual matter any other way); *Peel v. Astrue*, 5:08-CV-173, 2009 WL 3028300, at *7 (N.D. Fla. Sept. 17, 2009) (finding harmless error when the ALJ did not consider VA partial disability ratings that were effective before date plaintiff was last insured).

[7] It may very well be that the ALJ did not afford the VA disability determination "great weight" for some

7

Consequently, remand is necessary for the ALJ to apply the correct legal standard regarding the VA's disability determination.

The Commissioner urges the Court to, in essence, apply a harmless error analysis to the ALJ's legal error in failing to consider and analyze the VA's disability determination, arguing there is substantial evidence in the record to support the ALJ's determination regarding Arebalo's eye impairment. However, the VA's disability determination found that Arebalo was totally and permanently disabled due not only to his loss of vision, but also due to his hepatitis C, hypertension, gastroesophageal reflux disease, and onychomycosis. In addition, as noted above, the failure of the ALJ to consider the VA's disability determination is the type of legal error that is not subject to the harmless error analysis as the Court cannot try issues de novo, reweigh the evidence, nor substitute its findings for those of the Commissioner.

2. Medical Opinion of Dredar

The next issue is whether the Appeals Council failed to properly address the Medical Assessment by Dredar that was submitted by Arebalo after the ALJ issued his decision. Arebalo argues that the Appeals Council summarily denied Dredar's statement and did not evaluate it as required by the regulations, relevant Fifth Circuit case law, and the Hearings, Appeals and Law Litigation Manual ("HALLEX").[8] (Pl.'s Br. at 6-11.) Arebalo further claims that the Appeals Council should have either given controlling weight to Dredar's opinion, who was a treating physician, or performed a detailed analysis of Dredar's opinion under the factors set forth in 20

---

reason; however, the Court is left to speculate on this point as the ALJ completely failed to give any explanation of such reasons or even mention the VA determination in his decision.

[8] According to Arebalo, sections I-3-5-1 and I-3-5-20 of HALLEX requires the Appeals Council to specifically address and assess the weight of the additional evidence and legal arguments submitted in his request for review. (Pl.'s Br. at 8.)

8

C.F.R. § 404.1527(d) prior to rejecting Dredar's opinion. (Pl.'s Br. at 6-7.) Arebalo also argues that, even if Dredar was not a treating physician, the Appeals Council was required to evaluate Dredar's opinion and assess the "weight of the evidence and explain why the evidence does not justify granting the request for review." (Pl.'s Br. at 7-9.)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. §§ 404.970(b), 404.976(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 332 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*"))). "A court considering the final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (citing *Higginbotham II*, 163 F. App'x at 281-82). Moreover, the Appeals Council is bound to follow the same rules for considering medical opinion evidence as the rules that bind ALJs. 20 C.F.R. §

9

404.1527(f)(3). The SSA specifically provides that all medical opinions are to be considered in determining the disability status of a claimant. 20 C.F.R. § 404.1527(b).

In this case, on September 26, 2008 the ALJ issued his decision that Arebalo was not disabled. On November 24, 2008, Arebalo filed a written request for review. (Tr. 7). Prior to the Appeals Council's decision, Arebalo submitted a Medical Assessment dated October 22, 2008 and signed by Dredar. (Tr. 418-19.) In the Medical Assessment, Dredar opined that, due to hepatic encephalopathy,[9] Arebalo could (1) lift and/or carry ten pounds occasionally; (2) stand and walk at least two hours in an eight-hour workday; (3) sit less than four hours in an eight-hour workday; (4) never climb, balance, stoop, or crawl; and (5) occasionally crouch and kneel. (Tr. 418-19.) Dredar further opined that the hepatic encephalopathy also affected Arebalo's ability to handle, finger, and push or pull, as well as affected his ability to work at heights, while moving machinery, in extreme temperatures, around fumes, while exposed to chemicals and with noise. Specifically, Dredar stated, "The p[atien]t has hepatic encephalopathy and at any moment can decompensate and become confused [and] disoriented. He is currently being evaluated for a liver transplant. He has not been placed on the liver transplant list yet." (Tr. 419.)

---

[9] Hepatic encephalopathy is defined as:

[A] condition usually seen secondary to advanced disease of the liver but also seen with other severe diseases and in patients with portacaval shunts. It is marked by disturbances of consciousness that may progress to deep coma (hepatic coma), psychiatric changes of varying degree, flapping tremor, and fetor hepaticus.

DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 622 (31st ed. 2007).

10

On May 29, 2009, the Appeals Council denied Arebalo's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner (Tr. 2-6.)[10] The ALJ determined that Arebalo had the severe impairments of hepatitis C and type II diabetes mellitus. Despite these severe impairments, the ALJ found that Arebalo had the RFC to perform sedentary work.[11] In making this determination, the ALJ relied on the evidence in the record, specifically noting the following: (1) there was no evidence that Arebalo was in need of a liver transplant (Tr. 13) and (2) Arebalo's testimony, which included that he was severely confused, had very poor vision and hearing, and had been put on the national liver list, was not considered credible as it appeared he misrepresented himself throughout the hearing (Tr. 13-15). Although not clear in his decision, the ALJ also appears to rely on a Physical Residual Functional Capacity Assessment ("PRFC") dated May 4, 2004, 2007 and signed by Yvonne Post, D.O. ("Post"), in determining Arebalo's RFC. (Tr. 292-99.) In the PRFC, Post opined that Arebalo could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; sit, stand and/or walk for a total of about six hours in an eight-hour workday; and had the unlimited ability

---

[10] As noted above, the Appeals Council, in its denial, indicated that they had received additional evidence that it made part of the record, including "[e]xaminer [S]erag Dredar report dated October 22, 2008." (Tr. 6.)

[11] Sedentary work is defined as follows:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday. 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

11

to push and/or pull. (Tr. 293.) In addition, Post opined that Arebalo did not have any postural, manipulative, visual, communicative, or environmental limitations. (Tr. 294-96.)

Contrary to Arebalo's argument, the Appeals Council did not err, pursuant to the requirements in HALLEX, by failing to specifically discuss in detail its reasons for rejecting Dredar's Medical Assessment. Fifth Circuit precedent states that the requirement in HALLEX requiring a detailed discussion of additional evidence was suspended by the Executive Director of the Office of Appellate Operations years ago, and there is no indication such suspension has been lifted. *See Higginbotham*, 405 F.3d at 335 n.1; *see also Lee*, 2010 WL 3001904, at *8 (citing *Higginbotham*, 405 F.3d at 335 n.1). *Coleman v. Astrue*, No. 1:08-CV-230-SAA, 2010 WL 956175, at *6 (N.D. Miss. Mar. 11, 2010); *Walker v. Astrue*, No. 3:09-CV-1900-BH, 2010 WL 910505, at *9 (N.D. Tex. Mar. 13, 2001); *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *5 (W.D. La. Aug. 28, 2009). Instead, the issue before the Court is whether "the new evidence diluted the record to such an extent that the ALJ's determination became insufficiently supported." *Lee*, 2010 WL 3001904, at *8.

Dredar's opinion does conflict with some evidence in the record relied on by the ALJ as it indicates that Arebalo's RFC may be more restricted than found by the ALJ. However, it is unclear how the ALJ would have weighed Dredar's opinion in light of the other evidence in the record. In addition, it is not clear whether Dredar was a treating physician or had even examined Dredar. Based upon these uncertainties, it is difficult for the Court to determine whether Dredar's opinion diluted the record to such an extent that the ALJ's determination became insufficiently supported. Because the Court is remanding the case as to the other two issues

raised by Arebalo, the Court concludes that on remand the ALJ should consider Dredar's opinion as well.

### 3. Mental Impairment

The final issue is whether the ALJ erred: (1) by failing to find that Arebalo's mental impairment was severe, and (2) by failing to evaluate such mental impairments pursuant to the special technique set forth in 20 C.F.R. § 404.1520a. Arebalo argues that the ALJ failed to find any of Arebalo's mental impairments as a severe impairment even though the "evidence in the record demonstrates through mental examination that Arebalo's ability to perform basic mental work activities has been affected." (Pl.'s Br. at 12.) In addition, Arebalo argues that the ALJ erred by failing to follow the special technique set forth in 20 C.F.R. § 404.1520a in evaluating his mental impairments. (Pl.'s Br. at 12-13.)

The ALJ may not find an illness "non-severe" without explaining the bases for the finding in a manner that complies with the legal standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). *See, e.,g., Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 906-07 (N.D. Tex. 2008). Pursuant to *Stone*, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101.

In addition, federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants. 20 C.F.R. § 404.1520a(a). In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt 4, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings

13

that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. § 404.1520a(b)(2). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).[12] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1). The regulations contain a presumption that if the claimant's degree of limitation is rated as none or mild in the first three functional areas and as none in the fourth area, the ALJ will generally conclude that the claimant's mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). However, this presumption may be rebutted if "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.*; *see also Stone*, 752 F.2d at 1101 (establishing the following standard for determining whether a

---

[12] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.*

14

claimant's impairment is severe: An impairment is not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience); *White v. Astrue*, No. 4:08-CV-415-Y, 2009 WL 763064, at *9-10 (N.D. Tex. March 23, 2009) (refusing to accept the claimant's argument that the "ALJ's finding is contrary to *Stone*, because the ALJ, in applying the special technique [set forth in the regulations for evaluating mental impairments], found mild deficits in her concentration, persistence or pace, as well as social functioning").

In this case, the ALJ did not find that Arebalo's mental impairments were severe. In fact, the ALJ's only acknowledgement in his decision of Arebalo having any mental impairments were the following: (1) the ALJ's notation that Arebalo had testified that while working as a tire technician he experienced, *inter alia*, anxiety, and (2) the ALJ's reference to a note dated December 6, 2006 from the Dallas VA indicating Arebalo had been previously diagnosed with depression, was taking Celexa, and had reported that his mood and overall energy had improved. (Tr. 13-14.) The ALJ found that Arebalo only had the severe impairments of hepatitis C and type II diabetes mellitus. (Tr. 13.) In reaching this finding, the ALJ ignored the following evidence in the record relating to Arebalo's mental impairments: (1) psychological examination performed by Teresa Hale, Ph.D. ("Hale"), on April 4, 2007 at the VA facility (Tr. 211-216);[13] (2) Arebalo's testimony at the hearing before the ALJ that he takes medication for depression

---

[13] In the examination, Hale administered a neuropsychological screening battery test to Arebalo that indicated the following: (1) Arebalo's immediate memory score was in the low average range and his performance was uneven, which was a pattern Hale stated she would expect from a depressed patient; (2) Arebalo's language abilities were assessed to be in the low average range; (3) Arebalo's attention was in the borderline range, which indicated he was likely to have difficulty paying attention to incoming stimuli; and (4) Arebalo's delayed memory was assessed to be in the low average range. (Tr. 215-16.) Hale diagnosed Arebalo with depression, noted that his depression level had increased since September 9, 2006, and rated his GAF at 61. (Tr. 216.) Hale also opined that Arebalo's depression was "likely contributing to some cognitive problems (attention/immediate memory)." (*Id.*)

15

and experiences anxiety that causes him to not want to be around a lot of people (Tr. 32); (3) a Disability Determination and Transmittal Form, dated May 4, 2007 and signed by Post that secondarily diagnoses Arebalo with depression (Tr. 39); (4) various statements by Arebalo that he suffered from depression and anxiety (Tr. 99, 114, 125) and was being treated for mental and emotional issues (Tr. 123-24); and (5) VA treatment records indicating in 2006 and 2007 that Arebalo was being treated for a depressive disorder and anxiety (Tr. 142-44, 147-50, 158, 165, 169-70, 174, 176, 180, 183, 186, 201-05, 207, 220-21; *see also* Tr. 225, 227-28, 243, 247-48, 51-52, 255-58).[14]

Based on the evidence in the record that the ALJ completely ignored, the Court concludes that the ALJ failed to make a reviewable analysis of Arebalo's mental impairments pursuant to the standard set forth in *Stone* as the record clearly establishes that Arebalo had a medically determinable mental impairment that caused more than a minimal limitation in his ability to do basic work activities. In addition, the ALJ never cited to, discussed, nor documented application of the PRTF in the decision, which runs afoul of the requirements of the technique set forth in 20 C.F.R. § 404.1520a. Consequently, the ALJ committed legal error and remand is required. *See Satterwhite v. Barnhart*, 44 F.App'x 652, 2002 WL 1396957, at *2 (5th Cir. June 6, 2002) (stating that where a non-frivolous claim of mental impairment exists, the ALJ's failure to follow the technique and make the required findings constitutes legal error and requires remand); *Skidis v. Comm'r of Soc. Sec. Admin.*, No. 3-08-CV-2181-N, 2009 WL 3199232, at *10 n.4 (N.D. Tex.

---

[14] In addition, there is also a Psychiatric Review Technique form ("PRTF") dated May 4, 2007 and signed by Michele Chappuis, Ph.D. in the record that indicates Arebalo's mental impairments are not severe, which the ALJ appears to rely on but also failed to discuss. (Tr. 278; *see* Tr. 278-91.)

Oct. 2, 2009) (same); *Morris v. Barnhart*, No. SA-05-CA-1019-XR/NN, 2007 WL 496851, at *3-5 (W.D. Tex. Feb. 7, 2007) (same).

## II. RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The Court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until October 27, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## IV. ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until October 27, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 7, 2010.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv